**J.D. MALONE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–90–809.

Court of Criminal Appeals of Oklahoma.

June 17, 1994.

James English, for appellant at trial and Charles J. Migliorino, James Clark Law Offices, Ardmore, for appellant on appeal.

Fred Collins, Dist. Atty., Ardmore, for the State at trial, and Susan Brimer Loving, Atty. Gen. of Oklahoma and A. Diane Blalock, Asst. Atty. Gen., Oklahoma City, for the State on appeal.

## OPINION

STRUBHAR, Judge:

J.D. Malone, Appellant, was tried by jury and convicted of Murder in the first degree (21 O.S.Supp.1989, § 701.7(A)) and acquitted of Shooting with Intent to Kill (21 O.S.1981, § 652) in the District Court of Carter County, Case No. CRF–89–529, before the Honorable John Scaggs, District Judge. The jury found two (2) aggravating circumstances and sentenced Appellant to death.

On November 25, 1989 Appellant drove from Wynnewood to his daughter's home in Ardmore to bring her home for an overnight visit. Appellant sent his son, Rickie Malone, to the door to advise his sister that they had arrived. Rickie Malone knocked on the door and was greeted by a room full of men who said that Vickie Malone did not live there. Rickie Malone returned to his father's truck and told him that the men said Vickie did not live there. According to eyewitnesses Appellant exited his pickup and retrieved a .22 caliber automatic rifle from the back. Appellant then announced "I'm Vickie's daddy" and shouted "I'm going to kill you all". Appellant then fired at three men who had come out onto the porch. Two of the men managed to escape. However, Appellant shot and killed the third man, Teddy Glea-

son. William Barnard managed to disarm Appellant and Appellant fled after sustaining serious injuries. Ballistic tests concluded that the shell casings recovered at the crime scene and the bullets recovered by the medical examiner were fired from Appellant's rifle.

## ISSUES RELATING TO
## JURY SELECTION

Appellant argues in his second assignment of error that the trial court's denial of his pretrial motions to sequester the jury during trial and to conduct individual voir dire of prospective jurors denied him a fair trial. At the motion hearing defense counsel urged the motion to sequester and conduct individual voir dire because there were several death penalty cases scheduled on the trial docket that term. The State opposed the motions because Appellant's case was the first of two murder cases on the trial docket and argued Appellant suffered no prejudice because his jury would be selected first. The State further argued that individual voir dire would be too time consuming. The trial court overruled both motions finding that the case did not have enough notoriety to warrant sequestration and that a general voir dire with follow-up questions when responses warranted further explanation was sufficient to protect Appellant's rights.

■ This Court has repeatedly held that a motion to invoke the rule of sequestration is committed to the sound discretion of the trial court and is not an absolute right of the defendant. *Price v. State*, 782 P.2d 143, 147 (Okl.Cr.1989); *Harvell v. State*, 742 P.2d 1138, 1141 (Okl.Cr.1987). To show the trial court abused its discretion, Appellant must show, by clear and convincing evidence, that (1) the jurors were specifically exposed to media reports and (2) the reports were prejudicial to Appellant. *Price*, 782 P.2d at 147.

■ Appellant fails to offer any evidence that the jurors were exposed to media reports, nor does the record reflect that Appellant was prejudiced by the failure to seques-

ter. The trial court properly admonished the jury at each break in the proceeding and this Court presumes that the trial court's instructions were followed, absent specific evidence to the contrary. *Id.* at 148. Therefore, this proposition of error is denied.

■ The decision to allow individual voir dire of potential jurors is also committed to the sound discretion of the trial court and is not a right guaranteed a defendant. *Cannon v. State*, 827 P.2d 1339, 1341 (Okl.Cr.1992); *Wade v. State*, 825 P.2d 1357, 1362 (Okl.Cr. 1992). There is no indication, nor does Appellant allege, that he was not able to properly conduct a constitutionally adequate voir dire. Appellant does not specify any individual members of the panel who may have been improperly allowed to serve nor contends that he could not adequately question any potential juror. Accordingly, Appellant has failed to show that the trial court abused its discretion in denying his pretrial motion to conduct individual voir dire and thus this proposition of error is denied.

## ISSUES RELATING TO GUILT–
## INNOCENCE

■ In his first assignment of error Appellant asserts that the trial court erred in refusing to instruct the jury on the lesser included offense of first degree manslaughter.[1] Appellant contends that the evidence was sufficient to show that he was concerned for the safety of his daughter when he arrived to pick her up and was confronted by a group of men who told him she did not live there. He contends that such evidence was sufficient for a jury to conclude that he reacted from fear amounting to a sudden heat of passion, without malice.

■ It is beyond dispute that the trial court must instruct the jury on every degree of homicide where the evidence would permit the jury rationally to find the accused guilty of the lesser offense and acquit him of the greater. *Boyd v. State*, 839 P.2d 1363, 1367 (Okl.Cr.1992); *Fowler v. State*, 779 P.2d 580, 585 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060,

---

1. Appellant requested instructions on Murder in the second degree and Manslaughter in the first and second degree.

110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Lee v. State*, 700 P.2d 1017, 1019 (Okl.Cr.1985). However, a defendant is entitled to an instruction on a lesser included offense only when the evidence presented warrants such an instruction. *Boyd v. State*, 839 P.2d at 1367; *Hale v. State*, 750 P.2d 130, 136 (Okl. Cr.1988), *cert. denied*, 488 U.S. 878, 109 S.Ct. 195, 102 L.Ed.2d 164 (1988); *Foster v. State*, 714 P.2d 1031, 1039 (Okl.Cr.1986), *cert. denied*, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). The trial court must determine as a matter of law whether the evidence is sufficient to justify the submission of instructions on a lesser included offense to the jury. *Boyd v. State*, 839 P.2d at 1367; *Williams v. State*, 807 P.2d 271, 275 (Okl.Cr.1991); *James v. State*, 736 P.2d 541, 545 (Okl.Cr. 1987), *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987).

 We find the evidence presented in the present case was insufficient to support an instruction on First Degree Manslaughter. To warrant a First Degree Manslaughter instruction under 21 O.S.1981, § 711(2), evidence must be presented to support the conclusion that the homicide was perpetrated without a design to effect death by means of a dangerous weapon. *Boyd*, 839 P.2d at 1367. The testimony at trial showed Appellant shot his unarmed victim several times at close range. While the evidence that Appellant went to bring his daughter home and instead found a group of men in her living room may help explain Appellant's motive for shooting Gleason, it does nothing to bolster the inference that Appellant acted without a design to effect death. The State's evidence showed that Appellant opened fire on three men after shouting "I'm going to kill you all". There was no direct evidence that Appellant was concerned for the safety of his daughter. After reviewing the evidence, we do not believe that a rational juror could find that the death of Teddy Gleason was anything but the result of a premeditated design to effect death. Accordingly, we find no abuse of discretion in the trial court's failure to in-struct the jury on First Degree Manslaughter.

## ISSUES RELATING TO INEFFECTIVE ASSISTANCE OF COUNSEL

 In his twelfth and thirteenth assignments of error Appellant contends that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment. Appellant cites defense counsel's failure to investigate and present any evidence in mitigation of punishment as deficient representation. In support of his contention Appellant cites defense counsel's motion to withdraw as an admission of ineffectiveness.[2] Appellant contends that had defense counsel adequately investigated his character and introduced such evidence in mitigation, the outcome of his trial would have been different.

 To successfully prove ineffective assistance of counsel, Appellant must satisfy the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show: (1) that defense counsel's performance was deficient, which requires showing that counsel made errors so egregious that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that he was prejudiced by the deficient performance, which requires showing that counsel's errors deprived him of a fair trial with a reliable outcome. *Id.* at 687, 104 S.Ct. at 2064.

The United States Supreme Court clarified the second prong of the *Strickland* test last term in *Lockhart v. Fretwell*, — U.S. —, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The Court stated that the "touchstone of an effective assistance of counsel claim is the fairness of the adversary proceeding". *Id.* at —, 113 S.Ct. at 843. The Court held that a mere showing that Appellant's conviction would have been different but for counsel's errors would not suffice to sustain a Sixth Amendment claim. *Id.* The Court further held that unreliability or unfairness does not result unless the ineffectiveness of counsel deprives the defendant of a substantial or pro-

---

2. Defense counsel filed a motion to withdraw alleging that Appellant failed to meet his financial obligation to him and that counsel had not been given enough money to "prepare for a death penalty case". Counsel alleged that there were no monies for subpoenas and to conduct necessary investigation to address the Bill of Particulars. (O.R. at 140–143)

cedural right to which the law entitles him. *Id.* at ——, 113 S.Ct. at 844.

■■■ In reviewing claims of ineffectiveness, this Court indulges in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Camron v. State*, 829 P.2d 47, 55 (Okl.Cr.1992). Appellant must overcome the presumption that the challenged action might be considered sound trial strategy under the circumstances. *Id.* at 56.

From the record, we find that Appellant cannot meet his burden. Appellant cites counsel's motion to withdraw as an admission of ineffectiveness. However, at the motion hearing defense counsel advised the trial court that he had spent approximately one hundred hours in preparation. Counsel candidly advised the court that he did not believe he should be allowed "to fold my file and go home". Counsel then requested the court to appoint him for the duration of the case.

Appellant asserts that mitigating family background witnesses and medical history evidence were available. However, Appellant fails to substantiate this claim by specifying who those witnesses were with offers of proof of their testimony, or by detailing the relevant medical history evidence. After a careful review of the record, we find that counsel exercised the skill, judgment and diligence of a competent defense attorney under the circumstances when he incorporated the first stage evidence of the trial in which Appellant and several family members testified about Appellant's age, family history and medical problems into the second stage. The election not to introduce other evidence in mitigation in the second stage can easily be construed as sound trial strategy.

## ISSUES RELATING TO PUNISHMENT

■■■ As his third assignment of error Appellant asserts that the trial court erred in refusing to instruct the jury that, if they were unable to reach a unanimous verdict as to punishment, the trial court would impose a life sentence. 21 O.S.1981, § 701.11. This Court has consistently held such an instruction is improper because it invites the jury to avoid its difficult duty to pass sentence on the life of an accused. *Sellers v. State*, 809 P.2d 676, 691 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991); *Fox v. State*, 779 P.2d 562, 574 (Okl. Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Brogie v. State*, 695 P.2d 538, 547 (Okl.Cr.1985).

■■■ In his fourth assignment of error, Appellant asserts the trial court committed fundamental error by not instructing the jury that there exists a "presumption of life" which guarantees a person convicted of murder the right to live incarcerated for life unless the prosecution demonstrates beyond a reasonable doubt that death is the only appropriate penalty for the defendant. Appellant argues the presumption of life is fundamentally required like the presumption of innocence.

We note Appellant failed to request such instruction at trial. The few cases Appellant cites in support of this proposition address the principle that an accused is presumed innocent until proven guilty beyond a reasonable doubt. *See, Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); and, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). These cases do not require that a jury be instructed on the presumption of a life sentence during the second stage of a capital trial.

Appellant's argument has been raised and rejected in several recent cases. *See, Trice v. State*, 853 P.2d 203, 215–16 (Okl.Cr.1993); *Duvall v. State*, 825 P.2d 621, 634 (Okl.Cr. 1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 224, 121 L.Ed.2d 161 (1992); *Battenfield v. State*, 816 P.2d 555, 564 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992); *Fox v. State*, 779 P.2d 562, 574 (Okl.Cr.1989). Like in *Trice*, the jury in the instant case was properly instructed that Appellant was presumed innocent of the charges alleged in the Bill of Particulars, and he could not be sentenced to death unless it unanimously found beyond a reasonable doubt the existence of an aggravating circumstance. Additionally, the jury was instructed it could not consider an ag-

gravating circumstance the basis for imposing the death penalty, unless it first determined beyond a reasonable doubt that such circumstance outweighed the mitigating evidence. See, Instruction Nos. 4, 6 and 9. These instructions adequately apprised the jury of the appropriate law concerning sentencing, and included instructions on legally recognized presumptions. We, therefore, reaffirm our position that trial courts are not constitutionally required to instruct the jury on the "presumption of life" before a death sentence may be imposed. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Duvall,* 825 P.2d at 634.

In his fifth and eleventh assignments of error[3], Appellant argues that the imposition of the death sentence under Oklahoma's death penalty statutes constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments because under such statutes a trial judge is not required to give the jury particularized guidance concerning mitigating circumstances. *See,* 21 O.S.1981, §§ 701.9–701.12. Appellant seemingly argues since Oklahoma statutes fail to enumerate specific mitigating factors, this results in the jury's discretion in sentencing being unguided and unchanneled rendering the imposition of the death sentence arbitrary and capricious in violation of *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); and *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

We addressed this identical argument in *Foster v. State,* 714 P.2d 1031, 1041 (Okl.Cr. 1986), *cert. denied,* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986), and held that Oklahoma's sentencing scheme was consistent with other schemes upheld by the Supreme Court which direct the sentencer to weigh mitigating evidence against aggravating circumstances. In *Chaney v. State,* 612 P.2d 269, 279 (Okl.Cr.1980), *cert. denied,* 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981), this Court specifically held that 21 O.S.1981, §§ 701.10[4] and 701.11[5] provide sufficient guidance for the jury to evaluate both aggravating and mitigating circumstances. Moreover, we have consistently construed § 701.10 to allow a defendant to "present any relevant evidence, within the limitations of the rules of evidence, bearing on his character, prior record or the circumstances of the offense." *Id.* at 279–80.

In the instant case, the trial court defined "mitigating circumstances" as "those, which in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame." (O.R. at 299) The trial court further instructed that it was the jury's decision to determine what the mitigating circumstances were under the facts of the case. The jury was advised that it could specifically consider Appellant's age, Appellant's lack of prior criminal convictions, that Appellant acted out of concern for his daughter, Appellant's health and the physical beating Appellant received during the altercation. See, Instruction Nos. 7 and 8. These instructions reflect the applicable statutes and similar instructions have been held to satisfy constitutional dictates. *VanWoundenberg v. State,* 720 P.2d 328, 336 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Thomas v. State,* 811 P.2d 1337, 1350 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992); *Boltz v. State,* 806 P.2d 1117, 1125 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991). Accordingly, we find that the instructions given provided the jury sufficient guidance to prevent an arbitrary or discriminatory application of the death penalty.

In his seventh assignment of error, Appellant argues that his death sentence violates the Eighth Amendment because the

---

**3.** Appellant's assignments of error V and XI are virtually identical and address the same issue with the same supporting authority.

**4.** Section 701.10 provides that in the sentencing proceeding evidence may be presented as to any mitigating circumstances.

**5.** Section 701.11 provides that the death penalty cannot be imposed if any aggravating circumstances found are outweighed by mitigating circumstances.

trial court failed to instruct the jury that it had the right to sentence Appellant to life in prison even if it found that the aggravating circumstances were not outweighed by the mitigating circumstances.

We addressed this identical argument in *Johnson v. State*, 731 P.2d 993, 1003 (Okl.Cr. 1987), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987), and found it was not well taken. We held the ability of the jury to decline to impose the death penalty even if aggravating circumstances are not outweighed by mitigating circumstances, is subsumed within the instruction that if the jury finds one or more aggravating circumstances they may consider imposing the death penalty, i.e., that they could, but did not *have to*, impose death in that event. *Id.*

Like in *Johnson*, the jury was not instructed that they *must* assess death if aggravating circumstances were found, but not outweighed by mitigating circumstances. Rather, they were instructed that upon a unanimous finding of an aggravating circumstance they *could* be authorized to *consider* imposing a sentence of death. (Instruction No. 6, O.R. 298). We, therefore, find that the instructions given adequately state the applicable law and that the instruction advocated by Appellant was subsumed in Instruction No. 6 since the jurors were told that they could, not that they had to, impose the death sentence. *See also, Fox v. State*, 779 P.2d 562, 573 (Okl.Cr.1989); *Davis v. State*, 665 P.2d 1186, 1203–1204 (Okl.Cr.1983), *cert. denied*, 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983) and *Burrows v. State*, 640 P.2d 533, 544 (Okl.Cr.1982), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983).

■ In his eighth assignment of error Appellant alleges that his death sentence must be vacated because the trial court failed to properly instruct the jury concerning the burden of proof and the manner in which to weigh the aggravating circumstances and mitigating evidence. This Court has repeatedly held that specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *Romano v. State*, 847 P.2d 368, 392 (Okl.Cr. 1993); *Woodruff v. State*, 846 P.2d 1124, 1149 (Okl.Cr.1993); *Williamson v. State*, 812 P.2d

384 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). *See also, Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The instructions given to the jury properly advised them to weigh the aggravating circumstances against the mitigating evidence. Instructions No. 4 through 10 mirrored the Oklahoma Uniform Jury Instructions–Criminal and comprehensively informed the jury that a finding of the aggravating circumstances beyond a reasonable doubt is not by itself enough to assess the death penalty. Rather, the aggravating circumstances must clearly outweigh any mitigating circumstances, or the death penalty may not be imposed. Analogous instructions have passed constitutional muster. *See, Romano*, 847 P.2d at 392; *Woodruff*, 846 P.2d at 1149; *Davis v. State*, 665 P.2d 1186, 1202 (Okl.Cr.1983). Accordingly, we find this proposition of error without merit.

■ In his ninth assignment of error, Appellant contends that the Legislature and this Court have failed to sufficiently tailor the aggravating circumstance of "continuing threat to society". Appellant contends that such failure results in an arbitrary and capricious infliction of the death penalty. The constitutionality of this aggravating circumstance has been upheld by the United States Supreme Court in *Barefoot v. Estelle*, 463 U.S. 880, 896–899, 103 S.Ct. 3383, 3396–3397, 77 L.Ed.2d 1090 (1983), and by this Court in *Williamson v. State*, 812 P.2d 384, 410 (Okl. Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992); *Fox v. State*, 779 P.2d at 576; *Munson v. State*, 758 P.2d 324, 335 (Okl.Cr.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Castro v. State*, 745 P.2d 394, 407 (Okl.Cr.1987), *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988); *Smith v. State*, 737 P.2d 1206, 1215 (Okl.Cr.1987), *cert. denied*, 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Fisher v. State*, 736 P.2d 1003, 1009 (Okl.Cr.1987), *affrm'd on rehearing*, 739 P.2d 523 (Okl.Cr.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988), *reh. denied*, 487 U.S. 1246, 109 S.Ct. 3, 101 L.Ed.2d 955 (1988); *Walker v. State*, 723 P.2d 273, 285 (Okl.Cr.1986), *cert.*

*denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986); *Newsted v. State,* 720 P.2d 734, 739 (Okl.Cr.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); *VanWoundenberg v. State,* 720 P.2d 328, 337 (Okl.Cr.1986), *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Ross v. State,* 717 P.2d 117, 123 (Okl.Cr. 1986), *affrm'd,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

After reviewing these cases and the application of this particular aggravating circumstance, we continue to find that the phrase "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society" is clear and does not require further definition. The phrase directs the jury to examine the accused's conduct in the offense for which he was just convicted as well as other relevant conduct relating to the safety of society as a whole. *Williamson,* 812 P.2d at 410.

 In Appellant's tenth assignment of error, he again attacks the constitutionality of Oklahoma's application and review of its aggravating circumstances. Appellant contends that all of the statutory aggravating circumstances are overbroad, but specifically argues the overbreadth of the two found in his case. Since Appellant raised this precise issue regarding the "continuing threat" aggravating circumstance in the previous proposition of error, we will only address this argument as it pertains to the "great risk of death to more than one person" circumstance.

Appellant argues that the aggravating circumstance "the defendant knowingly created a great risk of death to more than one person" is unconstitutionally vague and affords the jury uncontrolled discretion within the meaning of *Godfrey v. Georgia,* 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Appellant cites a number of this Court's opinions in which the jury's finding of this aggravator was upheld to support his position that this aggravator is applied in an unchanneled manner.

This Court has previously addressed this issue as has the Tenth Circuit Court of Appeals. Both courts have specifically held this

circumstance constitutional as applied. *Stouffer v. State,* 817 P.2d 1275, 1278 (Okl.Cr. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1573, 118 L.Ed.2d 217 (1992); *Cartwright v. State,* 695 P.2d 548 (Okl.Cr.1985) and *Cartwright v. Maynard,* 802 F.2d 1203 (10th Cir. 1986), *on rehearing,* 822 F.2d 1477 (1987), *affirmed,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

Most recently, we addressed this argument in *Trice v. State,* 853 P.2d 203 (Okl.Cr.1993). As in *Trice,* Appellant contends this Court must narrow the application of this aggravator in order to properly guide juries in their effort to determine what conduct fits within its scope. *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In *Trice,* we found the "great risk of death to more than one person" aggravator does not suffer from the same linguistic problems which rendered the "heinous, atrocious, or cruel" aggravator unconstitutional. *Trice,* 853 P.2d at 220. "By its own terms, the 'great risk of death' aggravator has limited application. Further, this Court in *Chaney v. State,* 612 P.2d 269 (Okl.Cr.1980), *cert. denied,* 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981), determined this aggravator is not unconstitutionally vague." *Id.*

Moreover, we recently held that Oklahoma's system of capital punishment meets the qualifications established by the Supreme Court and on its face is constitutional. *Hain v. State,* 852 P.2d 744, 747–48 (Okl.Cr.1993). Accordingly, we find Appellant's argument unpersuasive.

 Appellant argues in his thirteenth assignment of error, that the introduction of court documents showing his charge of shooting with intent to kill violated 12 O.S.1981, § 2404(B) and was introduced merely to show prior bad acts. It should be noted that Appellant fails to provide any authority for his position. However, the Court addressed and rejected this precise argument in *Paxton v. State,* 867 P.2d 1309, 1322 (Okl.Cr.1994).

 Lastly, in his sixth assignment of error, Appellant contends that the aggravating circumstances found by the jury were not supported by the evidence and should not

be used to support his death sentence. The jury sentenced Appellant to death after it found the existence of two aggravating circumstances, that "the defendant knowingly created a great risk of death to more than one person" and "the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society". 21 O.S.1981, § 701.12(2) and (7).

 It is our duty to independently review the evidence to determine if the evidence supports the sentencer's finding of an aggravating circumstance before we can affirm any death sentence. *Battenfield v. State*, 816 P.2d 555, 565 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). We find the evidence amply supports the jury's finding that Appellant knowingly created a great risk of death to more than one person when he opened fire on Teddy Gleason and two other men as they stood on the porch. There was also evidence that there were other people in the living room of the residence and children playing outside.

However, we find insufficient evidence to support the jury's finding of the "continuing threat" aggravating circumstance. In support of the "continuing threat" aggravator, the State introduced a certified copy of a nineteen year old Murray County Information charging Appellant with shooting with intent to kill. Attached to the Information was the appearance docket, an appearance bond and a motion for continuance with supporting attorney affidavit. According to the last entry on the appearance docket Appellant plead guilty on November 2, 1972, was released on bond and sentencing was set for

December 18, 1972. No Judgment and Sentence was introduced. The final disposition of the 1971 charge could not be ascertained from the court documents.[6] The State then called J. Harold Rhoady, former sheriff of Murray County, to testify that Appellant was the same person named in the Information. No other circumstances surrounding the nineteen year old charge were introduced to support the "continuing threat" aggravator.

 We have held when the State alleges the continuing threat circumstance, it is *required to present evidence that the defendant's behavior demonstrated a threat to society and a probability that this threat would continue to exist in the future. Smith v. State*, 819 P.2d 270, 277–78 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992), *reh'g denied*, —— U.S. ——, 113 S.Ct. 11, 120 L.Ed.2d 939 (1992). The aggravator is not established unless the evidence at trial supports a finding that the defendant will continue to present a threat to society after sentencing. *Sellers v. State*, 809 P.2d 676, 689 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991). It is, therefore, necessary that the State present sufficient evidence concerning prior convictions or unadjudicated crimes to show a pattern of criminal conduct that will likely continue in the future to support its "continuing threat" contention.

In prior cases in which this Court has upheld the validity of this aggravating circumstance, "continuing threat" was proven through the introduction of Judgments and Sentences showing a history of violent criminal behavior[7] or through the introduction of additional evidence detailing the defendant's participation in other unrelated crimes[8] or

---

6. In chambers defense counsel advised that Appellant received a deferred sentence.

7. *See, Battenfield v. State*, 816 P.2d 555, 566 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992); *Banks v. State*, 701 P.2d 418, 426–27 (Okl.Cr.1985), *cert. denied*, —— U.S. ——, 112 S.Ct. 883, 116 L.Ed.2d 787 (1992).

8. *See, Castro v. State*, 844 P.2d 159, 172 (Okl.Cr. 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993); *Clayton v. State*, 840 P.2d 18, 35 (Okl.Cr.1992), *cert. denied*, —— U.S.

——, 113 S.Ct. 1655, 123 L.Ed.2d 275 (1993); *Boyd v. State*, 839 P.2d 1363, 1368 (Okl.Cr.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3005, 125 L.Ed.2d 697 (1993); *Boltz v. State*, 806 P.2d 1117, 1125 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991); *Nguyen v. State*, 769 P.2d 167, 174 (Okl.Cr.1988), *cert. denied*, —— U.S. ——, 113 S.Ct. 3006, 125 L.Ed.2d 697 (1993); *Munson v. State*, 758 P.2d 324, 335 (Okl.Cr.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989); *Walker v. State*, 723 P.2d 273, 286 (Okl.Cr.1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986); *Ross v. State*, 717 P.2d 117,

both [9]. This Court has also upheld the "continuing threat" aggravator based upon the sheer callousness in which a defendant commits a particular murder.[10] However, each of these cases is readily distinguishable from the instant case.

After reviewing our prior cases, we are compelled to find that the evidence presented in the instant case was insufficient to support a finding that there exists a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. The Information, without more, fails to establish that Appellant has any history of criminal conduct that will likely continue in the future. The State presented no evidence that Appellant was criminally active from 1971 to 1989 nor any facts surrounding the 1971 charge which would show that Appellant has a history of violent crimes that is likely to continue in the future. There also was no evidence Appellant sought out his victim or engaged in any calculated planning to kill Gleason to support a finding that the murder was committed in a particularly brutal or calloused manner. It is our affirmative obligation to keep the ap-

plication of aggravating circumstances within constitutional bounds, and to prevent "continuing threat" from becoming a "catch-all" for capital cases which do not fit any other statutory aggravating circumstances. *Battenfield,* 816 P.2d at 565. Accordingly, we must hold that the State failed to present sufficient evidence from which a rational trier of fact could find that Appellant would commit criminal acts of violence that would constitute a continuing threat to society. When an aggravating circumstance is found to be invalid, this Court has the authority to reweigh any remaining aggravating circumstances against the mitigating evidence to determine the validity of the death sentence. *Barnett v. State,* 853 P.2d 226, 233 (Okl.Cr. 1993); *Castro v. State,* 745 P.2d 394 (Okl.Cr. 1987), 749 P.2d 1146 (Okl.Cr.1987) (Opinion on Rehearing), *cert. denied,* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988); 21 O.S.Supp.1986, §§ 701.13(C) and 701.13(F). The Supreme Court has held there is "nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently

---

123–24 (Okl.Cr.1986), *affrm'd,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

**9.** *See, Trice v. State,* 853 P.2d 203, 220–21 (Okl. Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 638, 126 L.Ed.2d 597 (1993); *Pickens v. State,* 850 P.2d 328, 336 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 942, 127 L.Ed.2d 232 (1994); *Romano v. State,* 847 P.2d 368, 389 (Okl.Cr. 1993), *cert. granted in part,* —— U.S. ——, 114 S.Ct. 380, 126 L.Ed.2d 330 (1993); *Woodruff v. State,* 846 P.2d 1124, 1148 (Okl.Cr.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 349, 126 L.Ed.2d 313 (1993); *Stiles v. State,* 829 P.2d 984 (Okl.Cr. 1992); *Berget v. State,* 824 P.2d 364 (Okl.Cr. 1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *Smith v. State,* 819 P.2d 270 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992), *reh'g denied,* —— U.S. ——, 113 S.Ct. 11, 120 L.Ed.2d 939 (1992); *Green v. State,* 713 P.2d 1032, 1045 (Okl.Cr.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986) (overruled in part on other grounds); *Liles v. State,* 702 P.2d 1025, 1030–31 (Okl.Cr.1985), *cert. denied,* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986), *reh'g denied,* 478 U.S. 1028, 106 S.Ct. 3341, 92 L.Ed.2d 749 (1986).

**10.** *See, Workman v. State,* 824 P.2d 378, 383–84 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 113

S.Ct. 258, 121 L.Ed.2d 189 (1992); *Battenfield v. State,* 816 P.2d 555, 566 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992); *Sellers v. State,* 809 P.2d 676, 690 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991); *Boltz v. State,* 806 P.2d 1117, 1125 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991); *Fox v. State,* 779 P.2d 562, 577 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990); *Fowler v. State,* 779 P.2d 580, 588 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990); *Fisher v. State,* 736 P.2d 1003, 1009 (Okl.Cr.1987), *affrm'd on rehearing,* 739 P.2d 523 (Okl.Cr.1987), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988), *reh. denied,* 487 U.S. 1246, 109 S.Ct. 3, 101 L.Ed.2d 955 (1988); *Walker v. State,* 723 P.2d 273, 286 (Okl. Cr.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986); *Ross v. State,* 717 P.2d 117, 123–24 (Okl.Cr.1986), *affrm'd,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); *Liles v. State,* 702 P.2d 1025; 1030–31 (Okl.Cr. 1985), *cert. denied,* 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986), *reh'g denied,* 478 U.S. 1028, 106 S.Ct. 3341, 92 L.Ed.2d 749 (1986); *Robison v. State,* 677 P.2d 1080, 1088 (Okl.Cr.1984), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984).

unreliable ..." *Clemons v. Mississippi,* 494 U.S. 738, 750, 110 S.Ct. 1441, 1449, 108 L.Ed.2d 725 (1990).

■ In the present case, the mitigating evidence showed, among other things, that Appellant was fifty-nine years old at the time of the murder, was the father of sixteen children, and was in poor health. Appellant exhibited remorse for his actions and cooperated with authorities at all times. There was no evidence Appellant deliberately sought out his victim or planned to kill Gleason. Appellant had no prior criminal convictions. Further, the evidence showed he overreacted upon learning his daughter was not where she said she would be. Under the specific facts of this case, we find that the mitigating evidence outweighs the remaining valid aggravating circumstance. Accordingly, Appellant's death sentence must be modified to life imprisonment.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.Supp.1981, § 701.12. As noted above, the "continuing threat" aggravating circumstance fails because the State failed to present sufficient evidence to support its "continuing threat" contention. After carefully reweighing the remaining aggravator and all mitigating evidence, we have determined that the mitigating evidence outweighs the aggravating circumstance. Accordingly, the death sentence must be vacated and modified to life imprisonment.

Having reviewed the allegations of error raised by Appellant, we find that his conviction for Murder in the First Degree shall be AFFIRMED. Appellant's death sentence for Murder in the First Degree shall be MODIFIED TO LIFE IMPRISONMENT.

LUMPKIN, P.J., JOHNSON, V.P.J., and LANE and CHAPEL, JJ., concur.